No. 75,820

In the Matter of RONALD R. GOODING, *Respondent.*

(917 P.2d 414)

Opinion filed May 31, 1996.

*Stanton A. Hazlett,* chief deputy disciplinary administrator, argued the cause, and *Mark F. Anderson,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*William K. Rork,* of Topeka, argued the cause for respondent, and *Ronald R. Gooding,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Ronald R. Gooding, respondent, a Topeka attorney, alleging multiple violations of the Model Rules of Professional Conduct (MRPC).

A formal hearing before the panel of the Board for Discipline of Attorneys was held on October 24, 1995. Respondent appeared in person and by counsel. Respondent and the Chief Deputy Disciplinary Administrator offered numerous exhibits, which were admitted by agreement of the parties. The hearing panel entered the following findings of fact, conclusions of law, and recommendations:

### "FINDINGS OF FACT

"1. Ronald R. Gooding, is an attorney at law, Kansas Attorney Registration No. 10250. His last registration address with the Clerk of the Appellate Courts of Kansas is 817 SW 6th Street, Topeka, KS 66603. The respondent is a graduate of Washburn Law School in the class of 1979 and after being admitted to the bar in 1979 he practiced law in Topeka as well as being a licensed real estate broker.

"2. On June 22, 1989, the Shawnee County Sheriff Department, Drug Enforcement Unit, executed a search warrant at 2916 S.W. 17th Street in Topeka, KS. That address was the residence of the respondent and the respondent was the sole occupant at the time of the search. The scope of the search warrant was for cocaine and cocaine sales evidence. The following items were seized in the search:

   (A) A brown envelope containing four plastic baggies that each contained approximately one (1) ounce of what tested to be cocaine.

   (B) $2,900.00 in cash in $50 and $100 bills.

(C) A white canvas duffle bag in which was found a Deering Precision Instruments Cocaine Processing Unit.

(D) A set of O'Haus triple beam balance scales.

(E) A small amount of green-brown vegetation which tested positive for marijuana.

(F) Three (3) plastic bags containing Sno Seals.

(G) Medical instruments and pharmaceutical drugs which included a bottle of sodium chloride and a container of morphine sulfate.

(H) A bottle of Mannitol.

(I) A brown grocery sack which contained three (3) large plastic baggies of white powder. The powder tested positive for cocaine.

(J) A bottle of Inositol and a grinder.

(K) Five (5) paper folds which contained white powder that tested positive for cocaine.

(L) An additional quantity of marijuana and a chunk of green-brown substance which tested positive for tetrahydracannabinoids (hashish).

(M) A prescription bottle containing xanax tablets (the prescription was made out to someone other than the respondent).

(N) Numerous pieces of paraphernalia including snorting tubes, mirrors, a dinner plate with white powder substance on it, three (3) bowls located in the microwave oven which contained contents which tested positive for cocaine.

"3. Subsequent to the search the respondent was charged by the Shawnee County District Attorney's Office with thirteen (13) counts in a criminal complaint. On June 22, 1989, a complaint was docketed for investigation by the Disciplinary Administrator's Office as a result of the respondent's arrest. On June 29, 1989, the respondent requested transfer to disability inactive status pursuant to Supreme Court Rule 220(c). The respondent stated he was suffering from a current disability due to drugs or intoxicants which made it impossible for him to adequately defend himself in the disciplinary process. On June 30, 1989, the Kansas Supreme Court placed the respondent on disabled inactive status.

"4. Prior to the respondent's arrest he had been involved in a very serious automobile accident on March 20, 1989 which resulted in his hospitalization for two weeks and several months of being bedridden at home.

"5. After two preliminary hearings and one mistrial respondent entered into a stipulation with the Shawnee County District Attorney's Office which resulted in the dismissal of twelve of the thirteen criminal counts. The first stipulation was presented to Shawnee County District Judge Jackson who refused to accept the stipulation on the basis that it did not set forth a case of guilt and he would be unable to find the respondent guilty on the stipulation. Respondent's attorney then moved for acquittal which motion was overruled and a second stipulation was entered into and the court found the respondent guilty of possession of narcotic drugs, Class C felony.

"6. On April 12, 1991 the respondent was sentenced. The court sentenced the respondent to the custody of the Secretary of Corrections for a term of not less than three (3) years or not to exceed ten (10) years. The court noted that the amount of cocaine possessed by the respondent exceeded the limits set by K.S.A. 65-4127(e).

"7. On September 5, 1991 the respondent filed a Notice of Appeal in the Court of Appeals of the State of Kansas. The issue raised by the respondent on appeal were that the trial court erred in overruling the respondent's: (1) pretrial suppression motions, (2) pretrial motion based on double jeopardy, (3) pretrial motion regarding prosecutorial misconduct and, (4) pretrial motion dismissed based on speedy trial ground.

"8. On September 4, 1992 the Kansas Court of Appeals affirmed the respondent's conviction for possession of cocaine and on November 16, 1992 the Kansas Supreme Court denied the Petition for Review filed by respondent and as a result respondent was incarcerated from December 8, 1992 until December 15, 1993.

"9. On December 4, 1992 the respondent filed a Petition for Writ of Habeas Corpus in the United States District Court for the District of Kansas (Gooding vs. Stotts, et al, 92-CV-3456). On June 15, 1994 the United States District Court Judge Dale E. Saffels granted the respondent's Petition for Writ of Habeas Corpus and released the respondent from his conviction and sentence. Judge Saffels held that the respondent's constitutional right to be protected from prosecution for the second time for the same crime had been violated by the State of Kansas. It was determined that the jeopardy had attached when the initial stipulation of facts was submitted to the trial court by the prosecution and the respondent. The court held upon the finding of the trial court that the stipulation was legally insufficient to sustain a conviction, the respondent was acquitted. On July 15, 1994 the State of Kansas appealed Judge Saffels' decision to the United States Court of Appeals for the Tenth Circuit and on May 11, 1995 the United States Court of Appeals affirmed the decision of Judge Saffels.

"10. The respondent in his response to the formal complaint admitted that the set of O'Haus triple beam balance scales, the Deering Precision Instruments Cocaine Processing Unit and the other items found in the white canvas duffle bag were his as was the residue found on the plate and the bowls in the microwave oven and admitted that he is an alcoholic and cocaine addict but denied that he was owner of the large amount of cocaine found in the search of the premises.

"11. The respondent had started using alcohol and cocaine while he was in law school at Washburn University in 1979 and continued to be a user up until the time he was arrested on June 22, 1989.

"12. The respondent engaged in illegal conduct including the possession of illegal substances and paraphernalia.

"13. On September 9, 1994 in Bar Docket No. 10250 in the Matter of Ronald R. Gooding, Justice Allegrucci ordered that the disciplinary proceedings against the respondent be resumed and an Order to Show Cause was entered effective the 27th day of January 1995 again by Justice Allegrucci lifting the suspension of

respondent noting that respondent's conduct did not arise out of his practice of law or cause injury to a client.

## "CONCLUSIONS OF LAW

"Based upon the exhibits and evidence presented to the panel, the panel finds that the respondent has violated by clear and convincing evidence, the following disciplinary rules, to wit:

A. MRPC 8.4(b) Committed criminal acts [that] reflect personally on lawyer's honesty, trustworthiness or fitness of the lawyer in other respects, as evidenced by the testimony of respondent that he has possessed and used an illegal substance for a prolonged period in excess of ten (10) years.

B. MRPC 8.4(d) Engaged in conduct that is prejudicial to administration of justice in that respondent admittedly violated the criminal statutes which as a lawyer he had sworn to uphold.

C. MRPC 8.4(g) Engaged in any conduct [that] adversely reflects on a lawyer's fitness to practice law again by respondent's possession and use of an illegal substance for extended period of time in violation of the criminal statute of the State of Kansas which the respondent had sworn to uphold when he was sworn in as a lawyer in 1979.

## "MITIGATING OR AGGRAVATING CIRCUMSTANCES

"This panel then heard evidence of mitigating and/or aggravating circumstances both from the Deputy Disciplinary Administrator Mr. Hazlett and from the Respondent and his counsel Mr. Rork. Respondent presented the panel with a notebook with Exhibits A through N entitled Mitigating Circumstances.

## "AGGRAVATION

"Factors which may be considered an aggravation by the hearing panel include:

A. Prior disciplinary offenses—None.

B. Dishonest or selfish motives—None.

C. Pattern of misconduct. Respondent's use of an illegal substance, cocaine, over a ten (10) year period would evidence a pattern of misconduct.

D. Multiple Offenses—Again the continued use of cocaine by the respondent would evidence a pattern of multiple offenses.

E. Bad Faith Obstruction of a Disciplinary Process—On June 29, 1989 the respondent requested a transfer to disability inactive status pursuant to Supreme Court Rule 220(c) and on June 30, 1989 the Kansas Supreme Court placed respondent on disabled inactive status and suspended further disciplinary proceedings. The respondent by all accounts fully cooperated with the disciplinary process.

F. Submission of false evidence, false statements or other deceptive practices. No evidence.

G. Refusal to acknowledge wrongful nature of conduct. No evidence.

H. Vulnerability of victim—None.

I. Substantial experience in the practice of law—Not relevant.

J. Indifference to making restitution—Not applicable.

K. Illegal conduct including that involving the use of controlled substances— Again this is the basis of the complaint.

## "MITIGATION

"Factors which may be considered in mitigation by the hearing panel include:

A. Absence of a prior disciplinary record: Respondent had no prior disciplinary problems.

B. Absence of a dishonest or selfish motive: Not applicable.

C. Personal or emotional problems if such misfortunes . . . contributed to the violation of the Model Rules of Professional Responsibility: Evidence presented by the respondent indicated that he had severe personal and emotional problems particularly in 1984 when he was involved in a divorce and his young daughter was diagnosed with cancer in July and subsequently died in October of that year.

D. Timely good faith effort to make restitution: Not applicable.

E. Present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of transgressions: The panel found the respondent had a good attitude and fully cooperated during the investigation and the hearing.

F. Inexperience in the practice of law: Not applicable.

G. Good character and a reputation in the community including any letters from clients, friends and lawyers in support of the character and general reputation of the attorney: The respondent in his mitigation notebook furnished the panel with copies of letters from a number of lawyers including John Ostrowski of the McCullough Wareheim firm; Mark B. Rockwell, practicing attorney in Denver, Colorado; David W. Scott of Topeka; Dwight Cowen of Topeka and J. Richard Lake of Holton. In addition respondent presented letters from David Jensen of the Psychotherapy Services in Topeka; from David Pladson from the Clinical Counseling Recovery Services in Topeka; from Robert E. Jacoby III, M.D. respondent's family doctor; from Eric A. Voth, M.D. of the Cotton-O'Neil Clinic; and letters from respondent's clients Pamela G. Mayo; Michael W. Hammond, State Parole Officer and from Don Kern; Mr. & Mrs. David A. Nelson and from Leslie Guild Moriarty, all of which are contained in Exhibit F of the respondent's Mitigating Circumstances notebook.

H. Physical Disability: Not applicable.

I. Mental disability or chemical dependency including alcoholism or drug abuse when:

(1) There is medical evidence that the respondent is affected by a chemical dependency or mental disability: There was certainly evidence that the respondent had a chemical dependency particularly from and after the summer of 1984.

(2) Chemical dependency or mental disability caused the misconduct: Evidence was that chemical dependency did cause the multiple offenses.
(3) Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) The recovery arrested the misconduct and recurrence of that misconduct is unlikely. The evidence from the testimony of respondent's witness John L. Sims would indicate that the respondent is a recovering alcoholic and cocaine addict; that the man has been free of substance abuse since his arrest on June 22, 1989 and has been very active in attending and participating in Alcoholics Anonymous and Cocaine Anonymous groups; has undergone numerous urine tests over the period and they have all been negative.

J. Delay in disciplinary proceedings: Not applicable.

K. Imposition of other penalties or sanctions: Not applicable.

L. Remorse: Respondent evidenced what the panel believed to be genuine remorse over his past conduct which resulted in his losing his home, his office building, his standing in the legal community and his ability to earn a living.

M. Remoteness of prior offenses: Not applicable.

N. Any statement by the complainant expressing satisfaction with restitution: Not applicable.

### "RECOMMENDATIONS

"It was the recommendation of the Disciplinary Administrator that the respondent be disbarred from the practice of law because of respondent's admitted violation of Class C felony statute over an extended period of time. Mr. Hazlett referred to the Standards for Imposing Lawyers Sanctions of the American Bar Association Center for Professional Responsibility, particularly the section of Aggravation and Mitigation. The panel studying the ABA Standards looked at Section 5 Violations of Duties Owed to the Public and particularly 5.12 which indicates suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice and out of the commentary to that section it is noted that although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate a lack of those characteristics relevant to the law practice.

"The panel is of the opinion that the offenses of possession of a controlled substance over a lengthy period of time is a serious offense that would normally result in suspension; however, in this case the respondent has been free of alcohol and substance abuse since his arrest in June of 1989; he has been successful in rehabilitating himself with the aid of Mr. Sims and a number of other counselors. He has become a leader in several outpatient programs in counseling and as a temporary sponsor for addicts that are recently into recovery. Respondent's counsel pointed out the Bradley J. Smoot matter which involved possession of cocaine

who received a suspended one year sentence from the United States District Court there in Topeka and which, in that matter, the panel found that there had been a violation of then disciplinary rule 1.102(a)(5) concluded that his conduct did not adversely reflect upon his ability to practice law nor did his conduct reflect a moral turpitude making him unworthy to practice and recommended public censure, and the court after carefully reviewing the record concurred with the conclusions and recommendations of the majority of the panel and ordered published public censure.

"Respondent also pointed out the matter of Walter (Pete) Robertson, 256 Kan. 505, where our present Disciplinary Administrator Mark F. Anderson argued the matter on behalf of the respondent. In that matter the respondent was charged with several felonies for the purchase of cocaine from a friend who turned out to be an undercover agent for the police and he was found not guilty by a jury on the basis of entrapment. At a disciplinary hearing the respondent, as in the present matter, did not deny any of the allegations in the complaint and was given published public censure.

· "It is the recommendation of this panel that the penalty imposed on respondent be published public censure. We believe respondent has paid the price, that he is well on his way to recovery and that the profession will be well served by respondent's continued ability to practice his profession. In addition to the public censure the respondent, with the aid of the disciplinary administrator's office should contact the deans of our two law schools and volunteer to speak to the ethics classes about his experience with alcohol and drugs. Respondent's supplier during 1988 and 1989 was a Washburn law student by the name of Cochran who bragged that he was also supplying cocaine to twenty law students.

"It is the further recommendation of the panel that the costs of this action in the sum of $_____ be taxed against the respondent when determined by the Disciplinary Administrator's office."

In his response, respondent takes no exception to the report, the mitigating or aggravating circumstances, or the recommendations of the panel and requests that this court adopt the report as submitted.

We find that there is clear and convincing evidence establishing the facts as found by the panel and adopt the same. We further find that there is clear and convincing evidence establishing that respondent violated MRPC 8.4(b), (d), and (g) (1995 Kan. Ct. R. Annot. 340). It is obvious the panel found extensive mitigating factors and was impressed with the remedial actions taken by the respondent. We respect the panel's determination in this regard.

However, all members of the court view respondent's conduct as being more egregious than conduct where published censure is

imposed. All members agree that the violations are a severe breach of the Model Rules of Professional Conduct and a minority of this court is of the opinion that respondent's violations warrant suspension from practice or disbarment.

Nonetheless, based upon the following factors, a majority of the court is of the opinion that discipline against respondent should be suspended and that he should be placed on probation for 2 years from the date of this opinion: (1) Respondent has not been convicted of a felony violation in the use of drugs; (2) respondent has been free of substance abuse since his arrest on June 22, 1989; (3) respondent's recovery from his chemical dependency and his mental disability has been demonstrated by a meaningful and sustained period of successful rehabilitation; (4) respondent has shown continued commitment to treatment through professional counseling, alcoholics anonymous, and cocaine anonymous groups; (5) respondent has received punishment by reason of his incarceration from December 8, 1992, until December 15, 1993; and (5) all other mitigating factors contained in the panel report.

IT IS THE ORDER OF THE COURT that imposition of discipline against Ronald R. Gooding be and hereby is suspended and he is placed on probation for 2 years from the date of this opinion.

IT IS FURTHER ORDERED that respondent not violate the Model Rules of Professional Conduct and that in addition to meeting his continuing legal education requirements, respondent shall continue attending and participating in alcoholics anonymous and cocaine anonymous groups for a period of 2 years. Respondent shall furnish a report to the Disciplinary Administrator every 6 months showing proof of his attendance.

IT IS FURTHER ORDERED that in the event respondent fails to abide by the conditions set forth herein, a show cause order will be issued to respondent and this court will take whatever disciplinary action it deems just and appropriate, including suspension or disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the respondent pay the costs of these proceedings.