739 A.2d 1

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Bruce Scott GILBERT.**

**Misc. (Subtitle AG) No. 67, Sept. Term, 1998.**

Court of Appeals of Maryland.

Oct. 12, 1999.

Melvin Hirshman, Bar Counsel and Gail D. Kessler, Asst. Bar Counsel for Atty. Grievance Com'n of Maryland, for petitioner.

F. Patrick Kelly, Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland (the "Commission"), the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–709, filed a Petition for Disciplinary Action against Bruce Scott Gilbert, the respondent, alleging that he did engage in misconduct and charging violation of Rule 8.4(b) and (d) of the Maryland Lawyers' Rules of Professional Conduct.[1] The Petition was referred, pursuant to Maryland Rule 16–711(a),[2] to the Hon. James L. Ryan of the Circuit Court for Montgomery County, for hearing and to make finding of fact and conclusions of law.

---

1. Rule 8.4(b) and (d) provide:
 "It is professional misconduct for a lawyer to:
 \* \* \* \*
 "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.
 \* \* \* \*
 "(d) engage in conduct that is prejudicial to the administration of justice."

2. Rule 16–711(a) reads:
 "Rule 16–711. Disposition of Charges.
 a. Findings. A written statement of the findings of fact and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

Following a hearing, the hearing court concluded that "the Respondent engaged in criminal conduct involving the possession of cocaine in violation of Article 27, § 287 of the Annotated Code of Maryland and that such conduct constitutes a violation of [Rule 8.4] of the ... Rules of Professional Conduct." The conduct on which the conclusion was based is, as the court found, the petitioner's plea of guilty to a charge of possession of crack cocaine, for which he was sentenced to a four year term of imprisonment, which was suspended in favor of three years of unsupervised probation with special conditions that he be monitored by Richard Vincent of the Maryland State Bar Association and abstain from the use of alcohol. The petitioner took no exceptions to the findings of fact or the conclusions of law made by the hearing court. Although acknowledging that he engaged in the criminal conduct as the hearing court found, the respondent nevertheless excepted to that court's conclusion that his conviction of a single charge of possession of cocaine constitutes a violation of Rule 8.4(d).[3] He argues, without supplying any specifics, that the hearing court's finding in that regard is "not supported by the prior decisions of this Court and should not be permitted."

The only viable issue this case presents for resolution is the appropriate sanction to be imposed for conduct prejudicial to the administration of justice when it is the possession of a controlled dangerous substance that is basis for the violation. To be sure, it cannot be gainsaid that the possession of cocaine by a lawyer, an officer of the court, especially when it results in a conviction and probation, is prejudicial to the administration of justice. We have specifically recognized that the courts have the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence. *Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 205, 46 A.2d 289, 291 (1946). In

---

**3.** The respondent's papers referenced Rule 8.4(b), but as we have seen, the hearing court did not find a violation of that Rule, and the respondent has informed us that the reference was a mistake.

*Attorney Griev. Comm'n v. Richardson*, 350 Md. 354, 368–69, 712 A.2d 525, 532 (1998), we observed further, addressing particularly the conduct in that case,

"conduct that impacts on the image or the perception of the courts or the legal profession, *see Attorney Griev. Comm'n v. Alison*, 317 Md. 523, 536, 565 A.2d 660, 666 (1989) and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice. Lawyers are officers of the court and their conduct must be assessed in that light. If a lawyer who commits an act of dishonesty, fraud or deceit, thus causes the public to lose confidence in the integrity of those officers and the judicial system as a whole, *see Maryland State Bar Ass'n, Inc. v. Agnew*, 271 Md. 543, 549, 318 A.2d 811, 814 (1974), certainly one who flouts a decision of the highest court of the State in which he is admitted to practice, without justification and in violation of his ethical obligations, does likewise and engenders the same loss of confidence. Indeed, conduct of the type that the respondent engaged in breeds, inevitably and inexorably, disrespect for the legal system. We have not the smallest doubt that the filing of appeals, maliciously, and with no justification will amount to conduct prejudicial to the proper administration of justice whenever and however it may be defined or whoever does the defining. *See In re Diener*, 268 Md. 659, 671, 304 A.2d 587, 594–95(1973)."

The same analysis applies in the case of a lawyer convicted of possessing, or found to have possessed or used, cocaine.

The courts that have been presented with the issue have all held that an attorney's possession of cocaine, in any form, as indeed is the case with respect to other controlled dangerous substances, as well, is sanctionable. Most do so on the basis that such conduct adversely impacts the attorney's fitness to practice law. *People v. Madrid*, 967 P.2d 627, 628 (Colo.1998); *People v. Boyer*, 934 P.2d 1361, 1362 (Colo.1997); *The Florida Bar v. Temmer*, 632 So.2d 1359,1360 (Fla.1994); *In the Matter of Gooding*, 260 Kan. 199, 917 P.2d 414, 416 (1996); *In the Matter of Epps*, 148 N.J. 83, 689 A.2d 726 (1997); *Columbus*

*Bar Ass'n v. Baker,* 72 Ohio St.3d 21, 647 N.E.2d 152, 153 (1995); *In the Matter of Disciplinary Proceedings Against Broadnax,* 225 Wis.2d 440, 591 N.W.2d 855, 856 (1999). Others, including some of the states already mentioned, rest their decision on the prejudice to the administration of justice. *E.g., People v. Groland,* 908 P.2d 75, (Colo.1995); *Gooding,* 917 P.2d at 416; *In the Matter of the Discipline of Jeffries,* 500 N.W.2d 220, 226 (S.D.1993).[4] *See also In the Matter of Melvin T. Higgins,* 105 A.D.2d 462, 480 N.Y.S.2d 257, 258 (App.Div.1984) (although neither illegal conduct involving moral turpitude nor prejudicial to the administration of justice,[5] guilty plea to possession of marijuana "necessarily reflects adversely upon the legal profession in the public view and on [the attorney's] own fitness to practice law").

■ Of course, to the extent that conduct of a lawyer adversely affects that lawyer's fitness to practice law, it necessarily prejudices the administration of justice.

As to the sanction, the petitioner recommends that the respondent be suspended from the practice of law for one year and that, in addition to the payment of costs, his reinstatement

---

**4.** The court stated, as the reason for the attorney's discipline, "In light of all the evidence, we find Jeffries has, by his conduct, severely tarnished the image and integrity of the Bar." *Jeffries,* 500 N.W.2d at 226. It had previously observed:

"Jeffries' drug use does not appear to have occurred on the job and there is no evidence that Jeffries' illicit drug use adversely affected his abilities as a prosecutor. (Though in this regard, we note that he asserts he is "thinking more clearly now than before.") In fact, there is extensive testimony that Jeffries has been a properly prepared, good, professional and aggressive lawyer. No complaints appear to have been lodged against him by a client, attorney or judge,"

*id.,* thus seeming to negate the inference that Jeffries' fitness to practice was compromised.

**5.** The court explained why the conduct was not prejudicial to the administration of justice as follows:

"At no time did respondent's crime disadvantage a client, or impede or impair the quality, competence, reliability and trustworthiness of his professional conduct and the fulfillment of his professional obligations. At all times respondent cooperated with the authorities and made no effort to impede the functioning of the judicial system."

*Higgins,* 480 N.Y.S.2d at 258.

be conditioned on his abstaining from the use of alcoholic beverages and controlled dangerous substances, his participation "in such rehabilitative activities as may be prescribed from time to time by the Director of Lawyer Counseling Program of the Maryland State Bar Association," and his being monitored by Richard Vincent, including the submission of reports on a schedule determined by Bar Counsel, for two years. It reasons: "The imposition of a suspension for the Respondent's misconduct would protect the public interest by demonstrating to members of the bar that this type of conduct will not be tolerated."

The respondent urges dismissal of the charges or, failing that result, a reprimand. Asserting his current fitness to practice law and citing his efforts to recover from his addiction to drugs,[6] he argues, "[t]o suspend [him] at this time, even for a brief period, would simply be a punitive act providing no protection to the public."

The cases addressing the issue reflect that, for the protection of the public, e.g., In the Matter of the Discipline of Johnson, 488 N.W.2d 682, 684 (S.D.1992), the purpose of

---

**6.** The hearing court found in that regard:

"On September 15, 1997, the Respondent was admitted to an in-patient treatment program at the Allegheny Health Department, Joseph F. Masey Unit. This was Respondent's first in-patient treatment attempt for substance abuse. He successfully completed the program on October 19, 1997. Thereafter, on October 21, 1997, Respondent enrolled in an out-patient treatment program at White Flint Recovery, Inc. which was successfully completed on October 20, 1998. Respondent continues counseling with Richard B. Vincent. Respondent also attends weekly Alcoholics Anonymous meetings and has had a sponsor since September of 1997. Respondent also testified that he has stayed alcohol and drug-free since his arrest on September 3, 1997.

"Richard B. Vincent testified that Respondent is taking his alcohol and drug treatment seriously and continues to maintain a positive attitude towards treatment. Prior to Respondent's admittance to the Bar in June of 1992, he sought counseling from Mr. Vincent. In 1989, the Respondent received probation before judgment for driving under the influence in Maryland and in 1990 was convicted of driving under the influence in West Virginia. Mr. Vincent testified that once Respondent obtained admission to the Bar, the counseling ceased and then resumed shortly after respondent's arrest in September 1997."

attorney discipline, *see Attorney Grievance Comm'n of Maryland v. Brown,* 353 Md. 271, 295, 725 A.2d 1069, 1080 (1999); *Attorney Griev. Comm'n. v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Attorney Griev. Comm'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991), sanctions ranging from a reprimand to several years suspension have been imposed where possession of cocaine is involved. *People v. Gould,* 912 P.2d 556, 558 (Colo.1996) (censure); *Gooding,* 917 P.2d at 419 (two years probation); *Epps,* 689 A.2d at 727 (three months suspension); *Temmer,* 632 So.2d at 1361 (90 days suspension, followed by two years probation); *Jeffries,* 500 N.W.2d at 221 (three year suspension). Generally applying the American Bar Association's Standards for Imposing Lawyer Sanctions, *see* 1986 edition & Supp.1992, *e.g., Madrid,* 967 P.2d at 628; *Boyer,* 934 P.2d at 1363–64; *Gooding,* 917 P.2d at 418, the courts have been, and are, sensitive to an attorney's effort at treatment and rehabilitation. *See e.g., Jeffries,* 500 N.W.2d at 225–26; *Temmer,* 632 So.2d at 1360; *People v. Ebbert,* 873 P.2d 731, 733 (Colo.1994); *Baker,* 647 N.E.2d at 152–53; *Gooding,* 917 P.2d at 419. Another important consideration is the attorney's prior disciplinary history. It is also an important consideration whether the use of the drug is directly connected to the attorney's practice of law. *Madrid,* 967 P.2d at 628. (three year suspension when the attorney took cocaine as fee for services).

■ We have not heretofore been presented with the issue of the appropriate discipline for an attorney convicted of the possession of cocaine, thereby violating Rule 8.4(d). At the threshold, we acknowledge the obvious, that an attorney's use, and conviction of possession of, cocaine and, indeed, of any controlled dangerous substance, because, as we have held, it undermines the administration of justice, is extremely serious and cannot be condoned. Some sanction, for the protection of the public, is required; the question simply is what sanction. The severity of the sanction depends upon the facts and circumstances of the particular case. *Attorney Griev. Comm'n v. Kenney,* 339 Md. 578, 587, 664 A.2d 854, 858 (1995); *Myers,* 333 Md. at 447, 635 A.2d at 1318; *Hamby,* 322 Md. at

611, 589 A.2d at 56; *Attorney Griev. Comm'n v. Pollack,* 279 Md. 225, 238, 369 A.2d 61, 68 (1977). In *Attorney Grievance Comm'n of Maryland v. Breschi,* 340 Md. 590, 601, 667 A.2d 659, 665 (1995), we stated:

> "In cases where a criminal conviction is part of the basis for discipline, compelling extenuating circumstances may warrant a less severe sanction than is usually meted out for the same rule violation under different circumstances." *See Kenney,* 339 Md. at 588, n. 1, 664 A.2d at 858 n. 1. We have in the past defined such compelling circumstances as "only those which may cause this Court to view the conviction in a light which tends to show that the respondent's illegal act, committed in violation of a criminal statute, resulted from intensely strained circumstances. . . ." *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 527, 340 A.2d 710, 713 (1975)."

Moreover, we have long recognized the importance of an attorney's past disciplinary history in determining the sanction to be imposed, *Attorney Griev. Comm'n v. Franz and Lipowitz,* 355 Md. 752, 760–61, 736 A.2d 339, 343 (1999); *Attorney Griev. Comm'n of Maryland v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975), and that rehabilitative efforts by an attorney may mitigate the severity of misconduct not warranting disbarment. *Kenney,* 339 Md. at 588, 664 A.2d at 858–59.

 As we have seen, *supra* at footnote 6, although not his first contact with the criminal justice system as a defendant, this is the respondent's first disciplinary proceeding. Moreover, so far as the record reveals, and certainly the petitioner has not alleged otherwise, this misconduct was not directly related to the practice of law. Furthermore, the respondent has made efforts to rehabilitate himself and to overcome his addiction. Under these circumstances, we believe the appropriate sanction to be imposed is suspension from the practice of law for thirty days. Upon his reinstatement, the petitioner shall be monitored by Richard Vincent, the Director of the Lawyer Counseling Service of the Maryland State Bar Association, who will submit reports to Bar Counsel on a schedule to

**257**

be determined by Bar Counsel, and the petitioner shall participate in such rehabilitative activities as Mr. Vincent shall prescribe.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRUCE SCOTT GILBERT.*